Good morning, Your Honors. My name is Dixon Gardner. I'm representing the appellants. In a nutshell, this lawsuit is about the appellee's business strategy to drive my clients to the appellant by using the appellee's financial resources with the aid of a bylaw. With respect to this lawsuit, they've alleged certain things. The district court found they had proved certain things. Your job is to tell us why that's not true. We don't want to hear the histrionics about how big it is. The district court was wrong. I was about to get there. I believe they abused their discretion and they clearly erred. The court clearly erred in deciding and applying the rules of evidence to the evidentiary submissions by both parties. Well, are we on a summary judgment here? We are. And I guess my biggest problem with it is when I'm looking at a summary judgment, I'm looking to what are the genuine issues of material fact that the court did not address. And if I'm going to the copyright infringement of 17 U.S.C. 501, the plaintiff has to prove that it owns valid copyrights in the works at issue and that the defendant encroached upon those rights. My understanding is you don't even challenge that they own valid copyrights, right? That's correct. It's also my understanding that you don't dispute that the defendant trafficked infringing software. We do dispute that. It seems to me that what you suggest, and I read very carefully, there's nothing in your materials that suggests that you didn't. I put traffic. That's a tough term. I doubt you'd have gone with that. But at least used an infringing software. Your Honor, we addressed that initially in our oppositions to the motion for summary judgment by having both Appellant Abdullahi and Appellant Alam provide declarations that their business colleague emotion Robin Box. I know I'm not saying that right. I read through those, but none of that suggests that they didn't use or try to sell or try to involve themselves in software that wasn't Microsoft or that was Microsoft software but was counterfeited. I mean, my trouble is when issues of material fact or the district court is right. So I'm putting you dead on point. Tell me, what are the issues of material fact as to this use of counterfeit or infringing software? What are the facts that go the opposite way on that? One of the facts that we showed was that a Mr. Craig returned 35 disks of software to Ms. Alam. And then after he had done so, he submitted supposedly 35 disks. Where he got them, we don't know. And he's alleging that he got them from my clients. That couldn't be the case if my client, Ms. Alam, gave him a refund because the only way she gives refunds is if she actually gets physical control back of the software. And that's one of the items that was used. And what else? Sorry. I don't mean to interrupt you. I just wanted to ask if I misunderstood something. I thought in looking at the documentation that Microsoft showed the provenance of each of these, able to show what you only did with them, track each one, and there was nothing that you were able to show, if I understand it correctly, about the person you just mentioned that broke that chain. With software, particularly software that's identified in the way it is in this situation, it's not that hard to track this. I didn't see anything, like my colleague mentioned, I didn't see anything that counted it. Everything you just said did not ring true to what I saw in the evidence, which now Judge Smith is laying it out to you. All I was going to do is go back and see if there's anything you just said that was different than what I thought. So, Judge Smith's giving you a break. We clearly provided the evidence that Mr. Craig returned that software and that it couldn't be the software that he purportedly acquired from my counsel. What I saw in that is a conclusory statement. You're basically saying this guy did it. But unlike what Microsoft phrased, you know, this is the registration, and this is how it was used. You're saying this guy did it, and that's it. There's nothing to back it up other than things that can be ginned up. And where's the material issue of fact? How do you front that? How do you show that the district court was mistaken? There's no way my client, there's no way Mr. Craig can submit software that he's returned to my clients. And there's a Mr. Gorel, he did the same thing. He returned his software for a refund, and now he's making a submission to Intellectual Property Services. Hey, I acquired this from the appellants. That just can't be the case. How does that explain the millions and millions of dollars that showed up in the bank accounts that directly tracked these various sales? There was no evidence by the appellees that any of the money in any bank account went towards a counterfeit sale. Those are just allegations of there was like $4 million plus in an account that had Ms. Alam's name on that. We provided evidence that there is no exclusive sale of Microsoft products that contribute to that number. And that number was not tied to the 62 disks and the COA labels accompanying those disks or the registered refurbisher program product keys. Again, counsel, with respect, I know you're doing your job, and I don't want to disrupt that. What I'm struggling with is you've got a very carefully demarked tray with numbers, names, dates, money. It all flows unbroken. In most instances, you don't even refute it. Then you're telling us that some guy took these disks. Well, that's fine, but as you know, you're a good lawyer. You're not going to be able to overturn a summary judgment by saying this guy got the disks. You've got to do something more. Where is that something more? What are you refuting that can overturn what the district court did here? Something more is that federal rules of evidence require a declaration from a customer that says, I acquired the software from the appellants, and this is it. There is no such declaration, and that's 56 of the alleged counterfeit disks. That's over 90% of the disks. And then of the six disks that are contributed by the private investigators, none of those are acquired directly from an individual appellant. The evidence rules don't permit what they presented, and therefore you win. Correct. Wow. That's it. I mean, the appellee's arguing, I don't even have to have private investigators submit a declaration because what they submitted got submitted to intellectual property services. So you just have to trust that they sent in the correct information. Well, they didn't send in the correct information. And another allegation that we really have problems with is Ms. Ventura sits in her room in Washington State and says, well, here's a security feature that's counterfeit, and then she testifies, well, there's no way to find what the security feature is on a photocopy, whether it's covered in black or white. And then the judge is unable to determine whether there is a counterfeiting act that ever was occurred on any of the software that's alleged to be counterfeit, and yet we're here with a judgment that says my clients distributed counterfeit software without ever being able to identify any of the submissions as why they are counterfeit. You were just relying on someone's declaration in Washington State, and there's no way to confront the evidence. I cited cases where the judges themselves need to be able to look and be at the trier of fact to decide, hey, this is a security feature that was violated, therefore there is a counterfeit. As part of the summary judgment briefing in the district court, did the defendants present evidence that Craig and Gorel returned the software? They did. And where was that evidence in the record? If you'll let me, I'll pull it up. Was it by way of affidavit or declaration or deposition? It was by way of declaration. And on the opening brief, pages 47 to 54 contain the specific sites. Which one did you want again? Who you mentioned, Craig and Gorel. Yeah, sure. On page 47, at the bottom of the page. ER 224 colon 10 dash ER 226 colon 22. ER 261 colon 9 dash 15 comma 26 dash 29. ER 366 colon 15 dash ER 367 colon 2. Those are the ones referenced in 47 to 54, right? They are. 47 and 48 specifically for Mr. Craig. Then Mr. Gorel's site is below that. And then Ms. Helton, who is the actual purchaser of the software, gave it to a Steve Connor who made the submission. There's double hearsay right there. And that's page 48. Okay, so if you look at the record sites at pages 47 through 49 of your blue brief. 54. I'm sorry, 54. 56, actually. Okay, and that's where in the record we'll find the evidence that the defendant seduced. Yes, you will. To show that Craig and Gorel and Helton returned the software. Yeah, I'd like to point out something about Mr. Craig's transaction, which is cited by the appellees as evidence. If you total all the sum of the software that was alleged to be sold by my client and you subtract out Mr. Craig's refund, there's over a negative $1,000 balance. In other words, my clients didn't earn any money at all or didn't benefit at all from selling the software as alleged by the appellee. Where did the $1,000 come from? That's just an allegation of a number, and that's not attributable. It was proven. There were copies of what was in the bank. That was never tied to a single transaction. If I could, I'd like to now move to trademark infringement. Sure. Plaintiff has to prove there's a protectable owner. Yes. The last part is that your use of the mark is likely to cause customer confusion. All right? And then if I look at Malatir versus Zakenick Soles, if you use the counterfeit mark, who creates what that case says? Again, it's my understanding you don't dispute that the infringing software components contain copies of the marks. You're saying there's no dispute? That's my question. Do you dispute that the software components, whether it's counterfeit or trafficked or whatever, I traffic's a tough word, contain unauthorized copies of the marks? In my book, there were nine different counterfeit marks that were in the software components. So I guess, again, I'm saying why not summary judgment? My clients, again, Appellant Abdullahi, Appellant Alam, submitted two separate declarations that they never issued any software with counterfeit software components or software itself. Well, in fact, I read what you said, and I know I'm stopping you. But when I read your brief, it doesn't even seem that you dispute that your clients intended the customers to believe the marks. It doesn't seem to me you even make that argument. My client's argument is they only acquired Microsoft software from authorized sellers of that software and that they themselves did not produce any counterfeit software to sell and that they submitted 800 pages of here we acquired Microsoft authorized reseller product. And that's what they sold. That's what they were in the business to do. And they claim that all bad acts belong to Mohsen, who they reported to the police. And my clients wouldn't make that report to the police if they're engaged in a counterfeit action. One other question for you, Counsel. Do you agree that BMW has never been applied to statutory damages? I cited that case out of the Northeast, Sony Music BMG, that it was on appeal. But there was a district court judge that did apply BMW directly to a copyright infringement. Thank you. Thank you very much, Counsel. We'll hear our argument by the appellee. Good morning, Your Honors. May it please the Court. Catherine Dugdale for Microsoft Corporation. I'd like to start by briefly addressing some issues raised by Counsel. One, and actually they both have to do with the customers who allegedly returned software. And they have made some cites to the record. And first, it's important to note that that declaration from Ms. Alam and that evidentiary, there's a few documents attached to that, were not submitted timely with the summary judgment briefing. In fact, they were submitted after the summary judgment. And on that basis alone can be disregarded. Second, those documents, the record isn't exactly how it's been portrayed. Ms. Alam states in her conclusion that she never returned software, or she doesn't provide a refund unless software is returned. But there's no documentation showing that this is a policy, that indeed these two customers sent in the software. I gather you created a number of these declarations. Self-serving, conclusory, back them up. Is that fair? Absolutely, Your Honor. All that appellants provided in opposition to the summary judgment were the two declarations from Abdullahi and Alam and a number of invoices that, in fact, often held the opposite of what they were. Or that defendants were, appellants were buying software from unauthorized distributors. The reason I didn't talk about they were submitted late, it seems to me that if I affirm on summary judgment based on new evidence, I have everything he submitted and I'm saying, does it pertain to this summary judgment? Does it create a genuine? Absolutely not, Your Honor. As I said, the documents aren't what they're portrayed to be. They're sheets from PayPal just showing that there was a refund over a period of months. There's no documentation showing that these customers sent in their software or any documentation regarding any sort of policy that they don't issue refunds without receiving software. In fact, what the documents are, they're receipts from PayPal chargebacks where a customer will complain and then the money gets held and then eventually it gets sorted out between the parties. And it looks like there was eventually a refund to the customers, but no evidence that the software was ever sent in. Would a refund be given if the software wasn't returned? Most likely because they found out it was counterfeit because the customer sent their submissions into Microsoft and then found out through the analysis that they had bought counterfeit software and then went back to the appellant and said, I'd like a refund. Is there anything in the record that demonstrates that? Because these records were submitted late from appellants, Microsoft did not have a chance to address them in the summary judgment stage. But I think it's also important to note that even if those two customers are removed, Microsoft still has 20 other customers who submitted counterfeit components for investigator test purchases of counterfeit components from appellants. So those two customers neither add or subtract anything if they are removed. You said the evidence was submitted late. Was it before the argument in the ruling or after? It was about three days before oral argument. And was an argument made, did defense counsel make an argument at the summary judgment hearing based on the newly submitted evidence? I do not recall that that was part of the oral argument. And did the district judge address the new evidence in his ruling? He did not, and it is ruling on the bench. But again, even if it is considered and then deemed to somehow be true, it doesn't affect the case. Those copyrights and trademarks involved in those two submissions are present in all of the other customer and investigator submissions. The local rules of the Central District of California say anything about the late submission of evidentiary materials in conjunction with the summary judgment motion. They do. They say that those should be disregarded after the briefing periods are done. Do you have a site? Do you know what local rule it is? I know what it is in the Northern District of Illinois, but I don't know what it is. We probably have it in our briefing. I think it's in your briefing. Okay, that's fine. You don't need to get it. Fred? Your point is even if they are considered, it doesn't matter. It doesn't matter. Even if those two were returned, if those customers were provided software, it does not matter because there's, again, 20 other customer submissions and four different investigator test purchases showing counterfeit and illicit components from these appellants. And I think the court is correct that there are a number of undisputed facts. The court has already pointed out that there's no dispute whether the trademarks and copyrights are owned by Microsoft. Appellants have not disputed that the components are, in fact, counterfeit and illicit. They also don't dispute that they were distributed by the websites and they make a claim regarding an employee, but they don't dispute that those items came from their entity, nor do they dispute that that money was paid to appellants. They are incorrect when they say that the $4 million does not trace to the buyer. $4 million from the PayPal account are all payments from two of the websites, missionsofts.com and capitalpc.net. Appellants have not provided any documentation to show that they sold anything other than Microsoft components through those websites. Appellants do not maintain any financial or sales information, so they do bear the burden for that incomplete record. That is a fair statement. Two of the appellants did not oppose the summary judgment at all, offered no declaration or no evidentiary information, although all represented by the same counsel. And the other appellants only provided two individual declarations, all conclusory, self-serving, which this court can disregard. It's not sufficient to create a genuine issue of fact. Based on the undisputed evidence, the district court was incorrect in making its damage finding of $200,000 per trademark and $30,000 per copyright. It was well within its discretion, and appellants did not raise any argument in the summary judgment stage that those amounts sought by Microsoft were either incorrect or that the court could not issue those damage awards. The fact that they raised an issue, for example, versus Gore, does that mean the issue is way for our purposes? It is way for your purposes. And one comment on when you asked counsel if there was a case that had held Gore applied to statutory damages, and he referenced a Sony case out of the First Circuit, that decision was actually vacated for the exact provision being cited for. The First Circuit remanded with instruction not to analogize to Gore, but to instead analogize to, I believe it's Williams' Supreme Court case, which had the exact provision being cited. Did the district court make a fact finding of willfulness in terms of infringement? The district court did not make a fact finding of willfulness. What's the justification for going to the top of the statutory damage range for a non-willful violation? Again, the district court did make a finding of willfulness and did not go to the willful amount for damages. The court went to the maximum amount of non-willful damages, and I think the justification would be the overwhelming counterfeiting evidence and the large sum of money would push the case to that amount right before. Did Microsoft make a willfulness argument in the district court? Microsoft did not move for willful damages in the summary judgment. Other than the evidence and the damages on the summary judgment, the college has made a few other claims regarding service of process and bias. I think all of those are without merit and can be disregarded. Unless the court has other questions. Microsoft requests the judgment be affirmed. Thank you both for your argument. We appreciate it very much. This argument is submitted.
judges: M. Smith, N.R. Smith, Feinerman